KEKER & VAN NEST LLP
SUSAN J. HARRIMAN - #111703
R. ADAM LAURIDSEN - #243780
TIA A. SHERRINGHAM - #258507
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
E-mail: sharriman@kvn.com
       alauridsen@kvn.com
       tsherringham@kvn.com

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN ANTONICK, an Illinois citizen,<br><br>         Plaintiff,<br><br> v.<br><br>ELECTRONIC ARTS INC., a California corporation,<br><br>         Defendant. | Case No. 3:11-CV-01543-CRB (EDL)<br><br>**ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>Date:   January 10, 2012<br>Time:   9:00 a.m.<br>Ctrm:   E, 15th Floor<br>Judge:   Hon. Elizabeth D. Laporte<br><br>Date Comp. Filed:  March 30, 2010<br><br>Trial Date:   Not Assigned |

ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ...................................................................................................................3

III. ARGUMENT .........................................................................................................................5

    A. Source Code is a Unique Asset Whose Production is Limited. ...............................5

        1. Antonick Cannot Establish that Source Code is Relevant and Necessary to His Claims. ....................................................................6

        2. Antonick Cannot Identify Copyright-Protectable Elements of the Software at Issue. .........................................................................8

    B. Antonick's Motion to Compel Relies on a Factual Premise That is False. ..........................................................................................................................8

    C. Antonick Has No Right to Financial Information for Games For Which He Has No Factual Basis to Assert Used His Source Code. ..................................10

    D. EA Fully Responded to Antonick's Interrogatory. .................................................10

IV. CONCLUSION....................................................................................................................11

i
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abarca Health, LLC, v. PharmPix Corp.*
  ---F.Supp.2d---, 2011 WL 3802650 (D. Puerto Rico) ......................................................5, 7, 8, 9

*In re Apple and AT&TM Antitrust Litig.*
  No. C-07-5152 JW (PVT), 2010 WL 1240295
  (N.D. Cal. Mar. 26, 2010)..............................................................................................................5, 6

*In re Subpoena to Chronotek Systems, Inc.*
  No. 07-279, 2007 WL 2177013, at *2 (S.D. Tex. July 27, 2007) ...............................................6

*Johnson v. Gordon*
  409 F.3d 12 (1st Cir. 2005).............................................................................................................8

*Montgomery v. eTreppid Technologies*
  2008 WL 2277118 at *11 (D. Nev. 2008) ...............................................................................6, 7

*Synopsys, Inc. v. Nassda Corp.*
  No. C 01-2519 Si, 2002 WL 32749138 (N.D. Cal. Sept. 2002)......................................................6

*Viacom Int'l Inc. v. Youtube Inc.*
  253 F.R.D. 256 (S.D.N.Y. 2008) ...................................................................................................5

*Woods v. Resnick*
  725 F. Supp. 2d 809 (W.D. Wis. 2010) ....................................................................................7, 8

**Other Authorities**

4 Nimmer § 13.03 [B][2][c]................................................................................................................8

ii
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

## I.   INTRODUCTION

Defendant Electronic Arts Inc. ("EA") published *John Madden Football* in 1988 and 1989 for play on the rudimentary Apple II, Commodore 64, and IBM PC platforms. The videogame was conceived and designed by EA founder Trip Hawkins. EA hired Plaintiff Robin Antonick to write the source code necessary to operate the game on those consoles. Beginning in 1990, EA began to develop and publish a different football videogame under the "Madden" name and did so each year for the next twenty-two years (collectively, the *Madden* series), games in which Antonick was not involved and played no part in developing.[1]

In 2009, Trip Hawkins spoke publicly on the history of the *Madden* series and mentioned the fact (known, of course, to Antonick) that it took four years to develop the first *John Madden Football* videogame. According to Antonick, this interview caused Antonick to believe for the first time that EA may have used his copyright-protectable expression in other EA games. When his lawyers approached EA, EA voluntarily provided them with sworn declarations from several witnesses as well as the source code for the 1990 version of *John Madden Football*, which had been developed by a third party called Park Place Productions for play on the brand new Sega Genesis console ("*Madden Genesis*"). These sworn declarations and the source code established that none of Antonick's work was used in any subsequent versions of *Madden*.

Ignoring the sworn testimony and source code, Antonick filed a Complaint that alleges that *Madden Genesis* is a derivative work (under the copyright law)[2] of the videogames he coded in the 1980s. His Complaint does not allege that EA copied any of the code he wrote; instead, it alleges that EA used Antonick's "approach", "design", "technologies", and "methods"—namely, instant replay, simulation of player behavior, three-dimensional projection, and a positionable camera – features that are visible to the naked eye. *See*, *e.g.*, Complaint, ¶¶ 35, 37, 39, 41, 42,

---

[1] For background purposes only, attached to the Declaration of Adam Lauridsen ("Lauridsen Decl.") are a series of screen shots from a *USA Today* story called "The evolution of Madden." The screen shots depict the enormous changes and improvements to the technology of the *Madden* series. Lauridsen Decl., Ex. A.

[2] EA owns all intellectual and other proprietary rights in the game, subject only to any copyright interest Antonick may have.

1
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

45 and 48.

Significantly for the purposes of this motion, Antonick's Complaint specifically discusses only the *Madden Genesis* version in the *Madden* series, the game that followed on the heels of the games that Antonick coded and the source code for which EA has *already* produced. The sum total of allegations regarding other *Madden* games amounts to the following two paragraphs:

> 100. Every version of Electronic Arts' Madden software is derived from prior versions within the meaning of the 1986 Contract.
>
> 101. Every version of Electronic Arts' Madden software is thus a 'remote derivative work' within the meaning of the 1986 Contract.

Complaint, ¶¶100-101. That's all. And, despite his burden to show good cause for obtaining EA's source code, Antonick has not offered a single shred of evidence to contradict the fact that neither the *Madden Genesis* nor any subsequent *Madden* game ever used any part of his source code. In fact, Antonick does not argue in this Motion to Compel that he has any expectation that code for other *Madden* games contains Antonick's copyrightable expression.

Nevertheless, by this motion, he seeks (1) source code for every edition in the *Madden* series that EA has published annually for the past 23 years; and (2) financial data for all those games. The law, however, requires a showing of good cause before ordering the production of source code—a showing Antonick doesn't even try to make. And EA has already agreed to provide Antonick with its financial information for *Madden* games from 1990–92. Because Antonick has failed to offer any factual basis to support a conclusory allegation that later-produced games derived from the games that he coded, he is not entitled to financial information for any later-*Madden* games.

Finally, Antonick seeks to compel response to an Interrogatory to which EA already fully responded. EA objected to the fundamental term of the interrogatory, "developed independently," which Antonick did not define in the original interrogatory and refused to define during the parties' meet-and-confer discussions. EA therefore tailored its response to the subject matter of Antonick's claims: no EA games used or incorporated any copyright-protectable expression from Antonick's code. Antonick is not entitled to any response beyond EA's use of

2
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)
606281.02

1  "copyright protectable expression" because he has not identified, despite EA's repeated requests,
2  what other contractual right besides copyright is at issue.
3      For the foregoing reasons, and as more fully explained below, because Antonick has
4  failed to offer any facts or evidence to suggest that later games in the Madden series copied his
5  copyright-protectable expression, he has not carried his affirmative burden to justify the
6  production of EA's source code and related financial information. The Court should deny his
7  motion to compel.

## II. BACKGROUND

9      In 1984, EA contracted with Antonick to write the source code for a videogame to be
10  called "Football." RJN, Ex 1, p. 1 (Dkt. No. 23-1). During the game's development, EA
11  negotiated with Coach John Madden to help with the game and to use his name and likeness.
12  Compl., ¶ 19. Madden's involvement led Antonick and EA to enter into a new contract in 1986
13  for the development of a game to be called *John Madden Football* ("1986 Agreement"). RJN,
14  Ex. 2, § I (Dkt. No. 43-1). Pursuant to the 1986 Agreement, EA owned all intellectual and other
15  proprietary rights in the game, subject only to any copyright interest Antonick may have. *Id*.,
16  Ex. A, §§ 8.01, 8.04.
17      The 1986 Agreement entitled Antonick to $169,000 for completing three versions of the
18  game, for play on the Apple II, Commodore C64 and IBM PC platforms. RJN, Ex. 2, § IV (Dkt.
19  No. 43-1). These were rudimentary game consoles. The 1986 Agreement also entitled Antonick
20  to royalties calculated as a percentage of sales of these games, or of games that were "Derivative
21  Works" or "Remote Derivative Works" thereof. *See* Compl., ¶¶ 114-15. A Derivative Work
22  was defined as "any computer software program or electronic game which either (a) constitutes a
23  derivative work of the Work within the meaning of the United States copyright law or (b)
24  produces audiovisual effects which infringe the copyright in the audiovisual effects produced by
25  the Work." RJN, Ex. 2, Ex. A, § 1.03 (Dkt. No. 43-1). A "Remote Derivative Work" was
26  defined as "a Derivative Work by Publisher, derived directly from another Derivative Work by
27  Publisher, that runs on a Microprocessor Family different from that of the work." *Id.*, § 1.05.
28  The three versions of *John Madden Football* that Antonick coded were commercially released by

3
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

1989.  Compl., ¶ 27.  There is no dispute that Antonick was paid for all his work on these games, including any royalty payments due from their sales.  Antonick received his last royalty check in 1992.  *Id.*, ¶ 85.

This was an era of revolutionary development in videogames.  The Sega Genesis platform had recently been introduced, and in early 1990, EA decided to develop a new football videogame for it.  EA enlisted Park Place Productions to develop the game for that console.  *See* Compl., ¶¶ 68-70.  Antonick alleges that *Madden Genesis* is a Derivative Work under the 1986 Agreement, and he claims he is entitled to royalties on not only *Madden Genesis* but also the entire *Madden* series and other EA videogames that he speculates are Remote Derivative Works.  *Id.,* ¶¶ 99-101.

In March 2010, in a pre-litigation effort to demonstrate that it had not used Antonick's source code, EA voluntarily provided Antonick the source code written by Park Place Productions for *Madden Genesis* so that Antonick could confirm that the game did not contain any of Antonick's copyright-protectable expression.  Although the code-exchange agreement contained use-restrictions regarding code analysis conducted prior to litigation, EA has repeatedly offered to drop these restrictions to allow Antonick to use anything learned during his pre-litigation efforts.  Antonick has repeatedly refused EA's offer.  EA also has re-produced the 1990 Sega Genesis code for *John Madden Football* in this litigation so Antonick will not be limited by the code-exchange agreement.[3]

Once discovery commenced, EA served Antonick with the following interrogatory:

> Identify each and every element of 1990 SEGA GENESIS *JOHN MADDEN FOOTBALL* that YOU contend EA copied or derived from the WORK or any work or expression that YOU contend YOU authored, developed or created.  In so doing, DESCRIBE the feature, effect, structure, attribute, code or other element in the 1990 SEGA GENESIS *JOHN MADDEN FOOTBALL* and the corresponding feature, effect, structure, attribute, code or other element in the WORK and/or other works that YOU contend YOU authored, developed or created.

---

[3] EA has now produced to Antonick not only the 1990 Sega Genesis code for *John Madden Football*, but also the 1991 Genesis code for *John Madden Football 92*, 1992 Genesis code for *John Madden Football 93* and 1992 Super NES code for *John Madden Football 93*.

4
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

1  Armed with the game and the code itself, Antonick was equipped to answer this interrogatory
2  fully and completely and identify each element of his expression that he contends EA used—*if,*
3  *in fact, he has a factual basis to assert that the code would reveal use of his copyright-*
4  *protectable expression.*  Tellingly, Antonick refused, and responded as follows:

> [Objections]  Subject to the foregoing and General Objections, Plaintiff responds as follows:  EA has not yet provided Plaintiff with all relevant source code and development materials.  Provided that Plaintiff receives these materials in discovery as requested, Plaintiff will provide a response to this interrogatory in the form of an expert report at a time to be agreed upon by the parties and so ordered by the Court.

*See* Lauridsen Decl., Ex. B (Interrogatory Response, No. 2).  In other words, Antonick has no factual basis for his claim that *Madden Genesis* (for which he possesses the code) used his copyright-protectable expression.

If Antonick cannot identify the elements of code from *Madden Genesis* that allegedly derive from Antonick's code, then he doesn't need – and assuredly has not carried his burden to obtain – code from subsequent editions in the *Madden* series.  This is particularly true where the Complaint only identifies *Madden Genesis* with any specificity and where the Complaint does not allege code copying, in any event.

### III.   ARGUMENT

**A.   Source Code is a Unique Asset Whose Production is Limited.**

EA's source code is a highly confidential, proprietary and trade secret business asset of extraordinary commercial value.  Courts afford source code the same protection as a trade secret.  *Abarca Health, LLC, v. PharmPix Corp.*, ---F.Supp.2d--- , 2011 WL 3802650 (D. Puerto Rico).  Given its extremely sensitive nature, courts generally will not order the production of source code absent a showing of good cause that falls on the moving party.  *See, e.g.*, *In re Apple and AT&TM Antitrust Litig.*, No. C-07-5152 JW (PVT), 2010 WL 1240295, at *3 (N.D. Cal. Mar. 26, 2010) (denying motion to compel production of additional source code where party failed to establish relevance and need); *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 261 (S.D.N.Y. 2008) (denying motion to compel disclosure of additional source code where party had "not made a sufficient showing of need for its disclosure").  When only a portion of source code is

shown to be relevant, courts have ordered the production of that portion alone. *See In re Subpoena to Chronotek Systems, Inc.*, Misc. No. 07-279, 2007 WL 2177013, at *2 (S.D. Tex. July 27, 2007) (ordering disclosure of only "the portions of its source code, if any, that disclose, describe, or implement the use of a threshold amplitude to indicate the arrival of a pulse or otherwise initiate processing of the pulse signal").[4]

Antonick bears the burden of establishing that the source code sought is relevant and necessary to the prosecution of his case. *See, e.g.*, *Synopsys, Inc. v. Nassda Corp.*, No. C 01-2519 Si, 2002 WL 32749138, at *1 (N.D. Cal. Sept. 2002) (denying motion to compel production of additional source code in a patent case, stating that "[the requesting party] has the burden of establishing that the disclosure of the source code is both relevant and necessary to the action"). Speculation or mere belief that additional source code may be relevant or necessary is insufficient to compel production. *In re Apple*, 2010 WL 1240295 at *3. For example, in *Montgomery v. eTreppid Technologies*, a case upon which Antonick relies, the district court held that there was "no conceivable way" eTreppid could describe its trade secret without analysis of the requested source code. 2008 WL 2277118 at *11 (D. Nev. 2008). The court compelled the source code's production based on the state court's finding that Mr. Montgomery had taken eTreppid's source code when he left the company and that eTreppid possessed no other copy of its code. *Id*.

**1. Antonick Cannot Establish that Source Code is Relevant and Necessary to His Claims.**

Antonick already has more than he needs to support the only specific allegations in his Complaint. EA has provided Antonick with the source code for *John Madden Football* (1990), *John Madden Football 92* (1991) and *John Madden Football 93* (1992)—the *Madden Genesis* games that followed on the heels of the games that Antonick coded. EA has also produced to

---

[4] Even when a moving party has met his burden to justify the production of source code, courts generally require the entry of a protective order with special protection for source code. *See* Northern District of California Model Stipulated Protective Order (available at http://www.cand.uscourts.gov/stipprotectorder). Antonick has refused to stipulate to the entry of such a protective order.

6
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

Antonick every annual edition of *Madden* released since 1990 so that he can compare the visual features of each of the games.

Antonick has the material he needs to pursue his claims, or to confirm that he has no factual basis for them. Critically, even though Antonick has the source code for the *Madden Genesis* games, he has refused to identify any use of his code in those games – presumably because he and his expert have found no such copying. Lauridsen Decl., Ex. B (Antonick's Responses to Interrogatory, No. 2).[5] Undeterred, Antonick seeks the source code for even more sophisticated, and further removed versions in the *Madden* series that were developed for play on different, more advanced consoles over the past 20-plus years, without any factual basis whatsoever for claiming that the later works derived from the games that he coded.

Antonick seeks this code despite the fact that the Complaint does not allege that *Madden Genesis* or any subsequent version in the *Madden* series, contains Antonick's actual source code. *See, e.g.*, Compl., ¶¶ 35, 48, 53, 57. Instead, on information and belief, the Complaint identifies only non-code game elements that allegedly were incorporated into subsequent games—namely, instant replay, simulation of player behavior, three-dimensional projection, and a positionable camera. *Id.* EA went to great trouble to find and produce to Antonick every single annual edition in the *Madden* series, thereby allowing Antonick to compare the elements of the game that he coded to every subsequent *Madden* game. Antonick does not need to view source code to make these visual comparisons. *See Abarca*, 2011 WL 3802650 *5 (finding that source code is unnecessary to adduce similarities between non-literal elements such as graphical user interface or menu structure); *see also Woods v. Resnick*, 725 F. Supp. 2d 809, 821 (W.D. Wis. 2010) (denying request for production of source code in copyright ownership action because "even

---

[5] To punctuate the point, in response to EA's requests for production, Antonick refuses to identify what code he believes he owns, making any meaningful code comparison impossible. *See* Lauridsen Decl., Ex. C. (Pl.'s Responses to EA's First Set of Requests for Production at 4) (objecting to request to produce all code Antonick wrote for *John Madden Football* as unduly burdensome because "it requires him to determine whether documents in his possession constitute or contain source code and if so, the precise authorship of every fragment of code in his possession."). As discussed below, a predicate of any copyright claim is that the plaintiff can identify what portion of the allegedly infringed work was copied by the allegedly infringing work.

7
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

without viewing the code, [defendant] should be able to identify the subject matter of the code, what functions the code he wrote performed, or more specifics about when his side-by-side coding sessions with Woods occurred"). In *Abarca*, a software copyright infringement action, the court explained that "even if relevant, compelling disclosure of the Source Code as evidence of copying of non-literal elements would be unnecessary and would merely burden defendants without commensurate benefits." *Id.* Just so here.

### 2. Antonick Cannot Identify Copyright-Protectable Elements of the Software at Issue.

A defendant cannot be held liable where the similarity between two works arises from uncopyrightable elements. *See Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005); 4 Nimmer § 13.03 [B][2][c], at 13–76 (verbatim copying of unoriginal expression is not actionable). In *Abarca*, as here, the plaintiff failed to specifically identify copyright protectable elements of the software at issue. *Abarca*, 2011 WL 3802650 at *6-7. The court therefore denied the plaintiff's motion to compel the entirety of the defendant's source code. *Id.* Moreover, the court in *Abarca* held that an expert's report and declaration in support of production were insufficient to warrant the disclosure of defendant's valuable trade secret. *Id.* at *7.

Here, the Court cannot even weigh whether production of code is necessary because Antonick has not specifically identified what protectable elements of his work he believes were incorporated in subsequent works. Antonick's Motion to Compel does not identify a single specific code segment or game element he expects to find in the later *Madden* games. To carry his good faith burden, Antonick must show that the similarities between his and other games arise from copyrighted elements. He has not and cannot make that showing.

Because Antonick has not demonstrated good cause for the source code he requests, the Court should deny his motion to compel.

### B. Antonick's Motion to Compel Relies on a Factual Premise That is False.

The Court should deny Antonick's motion to compel for the independent reason that he relies on an expert who counter-factually assumes that the developers of subsequent *Madden* games had access to Antonick's source code. Kursh Decl., ¶¶ 23, 26, 27 and 28. Not true.

8
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION татат PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

When Antonick first threatened this lawsuit, EA searched for and could not find the source code for the games that Antonick coded. Declaration of Richard Hilleman ("Hilleman Decl."), ¶ 6. Richard Hilleman, the producer of the Antonick-coded *John Madden Football* game, does not recall ever looking at Antonick's source code. *Id.*, ¶¶ 1 and 6. Hilleman did not like the financially-unsuccessful game that Antonick coded, and determined to make a different and better football videogame. *Id.*, ¶ 7. EA contracted with Park Place Productions to develop a football videogame for play on the Sega Genesis console. Declaration of James Simmons ("Simmons Decl."), ¶ 3. Park Place in turn contracted with software engineer, James Simmons. *Id.* Hilleman never provided Antonick's source code to anyone and never spoke about any aspect of the Antonick-coded game to Simmons.[6] Hilleman Decl., ¶ 7; Simmons Decl., ¶ 5. Simmons, who programmed the *Madden Genesis* games, did not know that earlier versions of *John Madden Football* even existed. He had never heard of Robin Antonick and had never seen or played any other *John Madden Football* videogames. Simmons Decl., ¶ 4. Simmons worked in San Diego and not at EA and has stated under oath that no one from EA provided any game-related source code to him. *Id.*, ¶¶ 5-6. Simmons never saw or used any code from the *John Madden Football* game that Antonick coded. *Id.*

Thus, Kursh's assumption that Park Place had access to the original source code is false. Even if it was true, however, it does not explain why Antonick needs source code from versions of *Madden* released after *Madden Genesis*, the source code for which he already has. Given these facts, the Kursh Declaration is a red herring and does not explain why the source code sought is relevant and necessary. Antonick simply has no right to EA's source code.

---

[6] Antonick submits excerpts of Mike Kawahara's testimony, but it provides no support for further access to code. Kawahara never saw Hilleman look at Antonick's code. Lauridsen Decl., Ex. D (Kawahara Depo. 74:6-8) ("Q. With the EA football simulation, you never saw Rich Hilleman look at any source code? A. That's correct."). More importantly, Kawahara knows nothing about what Simmons and Hilleman discussed, or in this case, didn't discuss. Kawahara admits that he only saw Hilleman and Antonick speak on three occasions, years before the game was in final form, and that he did not understand what they were discussing other than that it related to problems with the Apple II platform. *Id*. at 68:9-71:16.

9
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

**C. Antonick Has No Right to Financial Information for Games For Which He Has No Factual Basis to Assert Used His Source Code.**

Antonick received all the compensation to which he was entitled for his work in the late 1980s on *John Madden Football* for Apple II, IBM PC and Commodore 64. EA has agreed to produce financial data related to the *Madden Genesis* games published in 1990-92, the games that EA published immediately after the games Antonick coded. Antonick though asks for financial data for all subsequent games in the *Madden* series—up to today—games that have no more relation to his than HDTV has to radio. Antonick's requests for financial data suffer from the same infirmities as his requests for source code. The Court therefore should deny his request for the reasons described above.

**D. EA Fully Responded to Antonick's Interrogatory.**

EA provided the most-complete response possible to Interrogatory No. 3, given Antonick's repeated failure to define its key terms. EA initially objected to the terms "independent development" and "independently developed," and sought clarification from Antonick regarding their meaning from its first meet-and-confer letter. Lauridsen Decl., Exs. E at 2 and F at 2 n.1.[7] Despite EA's repeated requests, Antonick made no effort to clarify the interrogatory and tag-along request for production. EA has answered the copyright question in full: no later version in the *Madden* series uses Antonick's copyright-protectable expression. EA provided extensive details for every version of *John Madden Football* and *Madden NFL* released from 1988 to the present, including the development studio, the gaming console system on which the game could be played, and the primary processor on which it runs. EA has also provided numerous declarations from both EA employees and individuals independent of EA stating that no Antonick code was used in later *Madden* games. Antonick has not demonstrated

---

[7] EA also objected to the vague and ambiguous terms "approaches, methods safeguards, and processes." Antonick similarly did not clarify the terms' meaning despite EA's repeated requests.

10
ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02

why any information beyond what EA has already provided him is relevant to his claims.[8]

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny the motion to compel in its entirety.

Dated:  December 16, 2011                                    KEKER & VAN NEST LLP

                                                             By: /s/ Susan J. Harriman
                                                                 SUSAN J. HARRIMAN
                                                                 R. ADAM LAURIDSEN
                                                                 Attorneys for Defendant
                                                                 ELECTRONIC ARTS INC.

---

[8]   Antonick inaccurately claims that EA stated each version of *John Madden Football* or *Madden NFL* is created from scratch. (Mot. at 5-6, 12-13, 14). Not so.  In making that claim, Antonick ignores the question to which EA's statement applied.  Antonick asked EA to identify every "DERIVATIVE WORK" or "REMOTE DERIVATIVE WORK" (terms under copyright) of each football videogame, and defined those terms in relation to his December 1986 contract with EA.  The December 1986 contract specifically defined those terms in reference to the Antonick-coded Apple II version of *John Madden Football*.  Given that definition, EA responded that it is unaware of any derivative work or remote derivative work—a complete and accurate response.

11

ELECTRONIC ARTS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
CASE NO. 3:11-CV-01543-CRB (EDL)

606281.02