KEKER & VAN NEST LLP
SUSAN J. HARRIMAN - #111703
R. ADAM LAURIDSEN - #243780
TIA A. SHERRINGHAM - #258507
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
E-mail: sharriman@kvn.com
  alauridsen@kvn.com
  tsherringham@kvn.com

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN ANTONICK, an Illinois citizen,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC., a California corporation,<br><br>Defendant. | Case No. 3:11-CV-01543-CRB<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**<br><br>Date:   January 10, 2012<br>Time:  9:00 a.m.<br>Ctrm:  E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte<br><br>Date Comp. Filed:   March 30, 2010<br><br>Trial Date:   Not Assigned |

## I. INTRODUCTION

In his opposition, Antonick attempts to obscure a simple question—should the protective order in this action include a "counsel only" confidentiality designation based on the Northern District's model language? Antonick ignores the three-part test used in the Northern District to determine whether a general "counsel only" term should be adopted and instead re-writes the parties' meet-and-confer history, advocates a speculative balancing test for which there is no legal basis and raises baseless assertions of burden. As EA explained in its opening motion, which Antonick does not dispute, good cause exists for the "counsel only" term because (1) Antonick's discovery covers a range of documents often entitled to "counsel only" protection; (2) EA's proposed protective order requires parties to designate documents in good faith; and (3) the burden remains on the designating party to demonstrate that any materials designated as "counsel only" are entitled to such protection. No further showing is required to adopt EA's proposed "counsel only" term.

Rather than address these arguments, Antonick urges the Court to undertake a fact-intensive balancing test, which is normally used when parties dispute the designation of a specific document under an existing protective order, rather than for the entry of a general protective order term. The analysis Antonick urges is not only entirely speculative—because EA has neither designated any materials as "counsel only," nor stated that it would assert such a blanket designation for any materials—but also may be unnecessary if the Court denies Antonick's motion to compel, scheduled to be heard with this motion.

And if the Court engages in the balancing test that Antonick advocates, it will result in adoption of EA's proposed "counsel only" term for the parties' protective order. On one side of that balance, Antonick provides no evidence that EA's proposed "counsel only" term imposes any burden on his ability to pursue his case, and his objections during discovery undercut the vague assertions of burden in his opposition. Antonick already has unfettered access to the source code for four *John Madden Football* games released in the three years immediately following the release of the Antonick-coded games. Yet in response to EA's interrogatories asking Antonick to identify what in these games EA purportedly copied or derived from

1

1  Antonick's work, Antonick has expressly refused to provide a response, including any code
2  analysis.  Instead, Antonick has argued that such interrogatories will be answered only with
3  expert reports.  Moreover, in response to EA's request for any code Antonick wrote, Antonick
4  objected that the act of identifying what code is his—the very act that he claims EA's "counsel
5  only" term could bar him from undertaking—is unduly burdensome.  Antonick's purported
6  reliance on experts to avoid his discovery obligations related to the code allegedly at issue
7  demonstrates that EA's "counsel only" term will not prejudice him.

8  Finally, given Antonick's recently-filed motion to compel production of source code for
9  over 120 *John Madden Football* or *Madden NFL* games, EA seeks to add to the protective order
10 a term requiring that code be deposited at a third-party site with controlled and logged access.
11 Regardless of whether the Court adopts EA's proposed "counsel only" term, this safeguard will
12 provide an additional layer of protection for some of EA's most closely-guarded confidential
13 material and trade secrets, and will pose no additional burden to Antonick.  *See* Northern District
14 of California's Model Protective Order for Litigation Involving Patents, Highly Confidential
15 Information and/or Trade Secrets (Lauridsen Decl., Ex. C (Doc. No. 51)), ¶ 9 & fn. 16 (the
16 provision that addresses EA's concerns).

17 **II.     FACTUAL AND PROCEDURAL BACKGROUND**

18 EA supplements its prior factual and procedural background section to address new
19 factual issues raised in Antonick's opposition.

20 Antonick attempts to frame his opposition to EA's motion with the baseless assertion that
21 EA has tried to "thwart Plaintiff's discovery at every turn."  Just the opposite.  EA has provided
22 Antonick with unfettered access to code for four *John Madden Football* games released from
23 1990 to 1992, the three years immediately following the release of the Antonick-coded games.[1]
24 EA also has responded to interrogatories and produced over 800 pages of documents—and by
25 the time of the hearing will have produced all unprivileged documents in EA's possession

---

[1] EA has produced under a "confidential" designation source code for the Sega Genesis versions of *John Madden Football* (1990), *John Madden Football 92* (1991) and *John Madden Football 93* (1992).  Additionally, EA produced source code for the Super NES version of *John Madden Football 93* (1992).

2
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER
CASE NO. 3:11-CV-01543-CRB

607314.01

concerning those early *John Madden Football* games from over twenty years ago. Given that much of the material Antonick seeks is over twenty years old, EA has had to sort through archived boxes by hand to locate potentially responsive material. EA's production is ongoing, and it has yet to withhold a single document because of the parties' protective order dispute.

Antonick also attempts to re-write the history of the parties' meet-and-confer discussions. He ignores the plain language of his final "counsel only" proposal and, in fact, abandons that proposal in his opposition in favor of an entirely new "counsel only" term that he never discussed with EA. In his opposition, Antonick quotes heavily from an earlier October 26, 2011 proposed protective order, Opp. at 3-4, but notably omits any quotation from his final proposal to EA, contained in a November 7, 2011 email from Antonick's counsel:

> The parties acknowledge and agree that only the following materials may be designated as Counsel Only: videogame code and development materials relating to the Playstation3 and Xbox 360 platforms, as well as any code and development materials for any videogame or videogame platform developed or released thereafter.

Lauridsen Decl., Ex. F (Doc. No. 51). In his opposition, Antonick claims that EA wrongly concluded that this proposal would not allow sensitive personal or financial information to be designated as "counsel only". Yet EA can fathom no other explanation for the meaning of the phrase: "[t]he parties acknowledge and agree that *only the following materials* may be designated as Counsel Only". *Id.* (emphasis added). EA objected to Antonick's proposal as unjustifiably narrow on November 9, 2011, but Antonick refused to rework it. *See* Lauridsen Decl., Ex. G (Doc. No. 51); Aragon Decl., Ex. H (Doc. No. 59).

Now, however, Antonick tacitly acknowledges that his final November 7 proposal was unjustifiably narrow by proposing a new "counsel only" term in his opposition. Opp. at 8. Antonick's new term drops the use of "*only* the following materials." *Id.* ("The parties acknowledge and agree that the following materials may be designated as Counsel Only"). Antonick also switched from a platform-based restriction on the "counsel only" term to a temporal restriction—barring "counsel only" designation for any code for pre-2005 games. *Id.* But Antonick's new "counsel only" term assumes, without any factual basis, that code for games released prior to 2005 does not contain highly confidential information or trade secrets. For the

3

1 reasons explained in EA's opening motion, good cause does not exist for this speculative, one-
2 size-fits-all approach. Rather, EA's proposed protective order—requiring the parties to
3 determine on a case-by-case basis what materials are entitled to "counsel only" designation—is
4 consistent with applicable law.

5 Finally, Antonick presents a self-serving declaration, claiming that he poses no risk to EA
6 if he personally is allowed access to EA's highly confidential code, and argues that he would be
7 prejudiced without such access. Antonick declares that he has "no current plans to return to
8 employment in the videogame industry," but his carefully-worded declaration does not eliminate
9 the possibility of his returning to the videogame industry in the future. *See* Antonick Decl. (Doc.
10 No. 59), ¶ 4. Antonick claims to be currently employed in the internet/technology field and has
11 not disputed during the meet-and-confer process that he still has contacts in the videogame
12 industry.

13 Antonick also puts forth no evidence regarding how he would be prejudiced by EA's
14 proposed "counsel only" term. *See id.*, ¶¶ 1-4. Instead, in his opposition to EA's motion, he
15 asserts that the proposed "counsel only" term will "severely hamper Plaintiff's prosecution of the
16 case" because "Plaintiff is better than anyone in the world at identifying his own handiwork."
17 Opp. at 2. But in response to EA's discovery, Antonick has taken the exact opposite position—
18 that he cannot provide any analysis regarding the code, that code analysis is an issue purely for
19 experts, and that the act of identifying what code he wrote is unduly burdensome. *See* Lauridsen
20 Decl., Ex. B (Doc. No. 62) at 4-10 (refusing to respond to EA interrogatories involving code); *id.*
21 at 6 (claiming that interrogatory will be answered only with expert report; Ex. C at 4 (objecting
22 to identification of own code as "unduly burdensome"). Antonick's flat refusal to engage in any
23 factual analysis of the code to which he already has unfettered access demonstrates that he will
24 not be prejudiced should EA ultimately designate any code as "counsel only."

25 **III.     ARGUMENT**

26 **A.     Antonick Concedes that Good Cause Exists for EA's Proposed "Counsel Only" Term.**
27

28 Antonick's opposition completely ignores the Northern District's test for deciding

4

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER
CASE NO. 3:11-CV-01543-CRB

607314.01

whether good cause exists to include a general "counsel only" term in a protective order. *See*, *e.g.*, *Van v. Wal-Mart Stores, Inc.*, No. C 08-5296, 2011 WL 62499, at *2 (N.D. Cal. Jan 7, 2011); *Quality Inv. Props. Santa Clara, LLC v. Serrano Elect., Inc.*, No. C 09-5376, 2010 WL 2889178, at *1 (N.D. Cal. July 22, 2010). As EA explained—and Antonick does not dispute—there is good cause to believe that discovery will involve materials properly designated as "counsel only," EA's proposed protective order includes a good faith designation requirement, and the designating party retains the burden, if challenged, to justify the "counsel only" designation. Mot. at 4-6. EA's proposed "counsel only" term therefore satisfies the three-part test used by the Northern District for such general protective order terms.

In his opposition, Antonick discusses whether certain code may be designated as "counsel only"—but EA has not designated any document as "counsel only." If EA does so at a later date and Antonick disputes the need for such a designation, then EA's proposed protective order contains a simple procedure for dealing with that dispute.

**B.    The Court Should Reject Antonick's Balancing Test.**

**1.    No Authority Requires the Court to Conduct a Balancing Test Before Entering a Protective Order with a "Counsel Only" Term.**

Antonick focuses on a question not before the Court: whether specific EA documents may be designated as "counsel only." Antonick urges the Court to engage in a speculative balancing analysis: *if* EA designates code for a specific game as "counsel only," would the risk of harm to EA outweigh any prejudice to Antonick? This fact-intensive analysis is unnecessary because (1) EA has neither designated any code as "counsel only," nor taken the position that it would assert a blanket designation of all subsequently produced code as such, and (2) EA will have already produced all relevant code if the Court denies the concurrently-pending motion to compel filed by Antonick. Antonick's attempt to have the Court adjudicate disputes that may never materialize is a waste of judicial and litigant resources, and risks entry of a blunt, imprecise protective order that will require future judicial intervention to correct.

The Ninth Circuit cases cited by Antonick in support of a balancing test are not relevant because they address challenges to already-designated documents and do not discuss when a

general "counsel only" term is appropriate.  In *Foltz v. State Farm Mut. Automobile Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), the court considered whether a specific set of documents initially designated as confidential solely because they were produced in the litigation (not because of content) must be shown to contain sensitive information when the designation is challenged.  *Id*. at 1131.  The court held that a specific factual showing was required to maintain the designation.  *Id*.  Similarly, in *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992), the dispute concerned a challenge to specific documents that had already been designated "attorneys' eyes only" and were later re-designated as "outside counsel only."  The court did not address the appropriateness of a general "counsel only" term.  *Id*. at 1469.  The court upheld the "outside counsel only" designation because the party alleging copyright infringement failed to demonstrate that use of a consultant for code review would have been unduly burdensome and did not need access to code to pursue "look-and-feel" claims.  *Id*. at 1471-72.

The *Foltz* and *Brown Bag Software* decisions, although not directly on-point here, are instructive because EA's proposed "counsel only" term avoids the designation objections raised in both cases.  Unlike the protective order in *Foltz*, EA's proposed protective order requires the party designating a document to have a good-faith factual basis for the designation.  If a dispute arises regarding a designation, EA's proposed protective order also contains a simple procedure for addressing it and places the burden on the designating party to justify the contested designation.  Moreover, like the copyright plaintiff in *Brown Bag Software*, Antonick can pursue any "look-and-feel" claim he may possess through the review of publicly-available materials—the *Madden* games themselves, which EA produced.

Antonick's reliance on *Defazio v. Hollister, Inc.*, 2007 WL 2580633, at *1 (E.D. Cal. Sept. 5, 2007), is similarly misplaced because the decision does not support the type of limited

/ / /

/ / /

/ / /

/ / /

/ / /

"counsel only" term Antonick seeks here.[2] In considering the appropriateness of an "attorneys' eyes only" term, the *Defazio* court held that "there is no doubt that *some* of defendant Holister's and other persons'/entities' documents are very financially sensitive or substantially invade privacy." *Id*. (emphasis in original). Based on this finding, it included an "attorneys' eyes only" term in the protective order. The court carved out an exception to the term—allowing one plaintiff to view documents with his attorneys present—because the plaintiff demonstrated that his input would "be helpful in determining the bona fides of the information submitted by defendants." *Id*. at *2. No such exception is needed here because Antonick has the relevant code for those games that were developed in the years following the games that he coded. Whether any source code for additional games is designated "counsel eyes only" depends first on whether Antonick can make the requisite factual showing for that source code—a showing which is the subject of a different motion.

For these reasons, Antonick has no legal basis for forcing the Court to engage in a speculative balancing test regarding the appropriateness of a "counsel only" term.

**2. Even if the Court Conducts a Balancing Test, Antonick Has Not Shown that the "Counsel Only" Designation Poses An Unreasonable Burden.**

Antonick repeatedly claims in opposition to EA's proposed protective order that he needs personal access to EA's source code to pursue his case. But Antonick puts forth no evidence supporting his burden claim, and his assertions regarding burden are directly contradicted by his objections to EA's discovery.

First, although Antonick claims that he "has a deep base of technical knowledge and is

---

[2] The various other district court cases cited by Antonick are either irrelevant or they support EA's proposed "counsel only" term. The courts in *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006), and *Arvco Container Cor. v. Weyerhaeuser Co.*, 2009 WL 311125, at *7 (W.D. Mich. Feb. 9, 2009), considered challenges to the withholding of specific material based on confidentiality claims. Their holdings—information may be withheld as confidential only if there is a factual basis for believing the information actually is confidential—are unsurprising and irrelevant to this dispute. Similarly, Antonick relies on a portion of *Coldani v. Hamm*, 2008 WL 3992719, at *2 (E.D.Cal. Aug. 26, 2008), concerning a pending motion to compel specific interrogatory responses. *See id.* at *1-2. To the extent the *Coldani* court discusses protective orders, it instructs litigants to do precisely what EA has done here: file a motion explaining why good cause exists for the requested protective order term. *Id*. at *1.

intimately familiar with the design elements at issue here," Opp. at 9, he has refused to provide a single fact supporting his contention that EA copied his code. For example, EA's requested that Antonick "[i]dentify each and every element of 1990 SEGA GENESIS *JOHN MADDEN FOOTBALL* that YOU contend EA copied or derived from the WORK or any work or expression that YOU contend YOU authored, developed or created." *See* Lauridsen Decl., Ex. B (Doc. No. 62) at 5. EA produced the source code for the 1990 version of Sega Genesis *John Madden Football* with no "counsel only" restriction. Despite this opportunity to review code, Antonick provided no facts in support of his contention and took the position that "Plaintiff will provide a response to this interrogatory in the form of an expert report at a time to be agreed upon by the parties and so ordered by the Court."[3] *Id.* at 6. Antonick cannot claim he is prejudiced by a "counsel only" term limiting his ability to analyze code when he is expressly refusing to provide any facts in response to EA's interrogatories regarding the code that he already has.

Second, Antonick claims that "no one is as capable as [he is] at spotting what work is derivative of his work," Opp. at 9, but has objected to EA's requests for production on the grounds that identifying what code is his is unduly burdensome. Specifically, EA asked Antonick to produce "[a]ll versions and iterations of any software code YOU claim to have written or created for any FOOTBALL VIDEOGAME…." *See* Lauridsen Decl., Ex. C (Doc. No. 62) at 4. Antonick objected that the request is "unduly burdensome to the extent it requires him to determine whether documents in his possession constitute or contain source code and if so, the precise authorship of every fragment of code in his possession." *Id.* Antonick cannot claim that he is prejudiced by a "counsel only" term when he expressly refuses to identify his own code.

Third, Antonick claims that "[w]ithholding key evidence from [him] will also impair the ability of Plaintiff's counsel to advise him … on the relative merits of the case," but has not

---

[3] Plaintiff also objected that the interrogatory "to the extent that it impermissibly seeks the premature and non-reciprocal disclosure of trial experts and expert information, or requires Plaintiff to set forth factual analyses, comparative analyses, opinions or theories that may be the subject of expert testimony." *See* Lauridsen Decl., Ex. C (Doc. No. 62) at 4.

1  demonstrated that any code beyond what EA has already produced is relevant to his claims, let
2  alone "key evidence." As EA explains in its opposition to Antonick's motion to compel, the
3  Complaint does not allege code copying and does not discuss any specific *Madden* game other
4  than *John Madden Football* for the Sega Genesis, published in 1990. Antonick has unrestricted
5  access to the *Sega Madden* code, but has failed to identify a single instance of copying to justify
6  further code discovery. Antonick can learn all he needs to know from the *John Madden Football*
7  source code already produced in this litigation: EA did not copy Antonick's protectable
8  expression.

9  Finally, EA's production of *Madden* code without "counsel only" restriction for the three
10 years immediately following the release of the Antonick-coded games demonstrates its good
11 faith in designating documents. When EA agreed to provide three years' worth of code for
12 Antonick's inspection, it reviewed code for each game specifically to determine the proper
13 confidentiality designation. EA engaged in a similar review when producing over 800 pages of
14 documents, all of which came from EA's confidentially-maintained files. Had Antonick
15 followed the procedure specified by the agreed-upon provision in the protective order and
16 approached EA regarding the designation of a "Federal Express receipt" and a "blank page", EA
17 would have de-designated them. Indeed, EA has now done so.

18 As explained above, Antonick has not demonstrated and cannot demonstrate that he
19 would be prejudiced by adoption of EA's protective order. Therefore, even under Antonick's
20 proposed balancing test, good cause exists for EA's "counsel only" term.

21 **C.    Any Additional Code Produced By EA Should Be Deposited at Third-Party Code Repository Pursuant to Northern District Practice.**
22

23 EA has already provided Antonick with full access to source code for three years' worth
24 of *John Madden Football* games released immediately after the ones he coded. Despite
25 unfettered access to code for the only game specifically referenced in his Complaint (*John*
26 *Madden Football* for the Sega Genesis), as well as code for versions that followed it, Antonick
27 continues his baseless push for additional code. Two days after EA filed its motion for a
28 protective order, Antonick broke off negotiations regarding his requests and filed a motion,

seeking to compel the production of source code for all *John Madden Football* and *Madden NFL* games released from 1993 to the present—over 120 games in all.

Antonick's new discovery posture may expand a code production that initially involved a limited number of simple games into a potentially high-volume transfer of EA's most sensitive trade secrets and confidential material.  If the Court ultimately orders the production of any of the additional code that Antonick seeks, EA requests that the Court modify the proposed protective order to require production of the code to a third-party repository with controlled and logged access.  *See* Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Confidential Information and/or Trade Secrets (Lauridsen Decl., Ex. C (Doc. No. 51)), ¶ 9 & fn. 16 (the provision that addresses EA's concerns).  A code repository will ensure that the potentially high volume of code being reviewed is not inadvertently disseminated or exposed to persons not authorized to see it under the protective order. Additionally, the storage of any code ultimately produced at a third-party site will facilitate reclamation of that code upon conclusion of the litigation.

## IV.     CONCLUSION

For these reasons, EA respectfully requests that the Court grant its motion for a protective order.

Dated:  December 21, 2011                                          KEKER & VAN NEST LLP


By:  /s/ R. ADAM LAURIDSEN
SUSAN J. HARRIMAN
R. ADAM LAURIDSEN
Attorneys for Defendant
ELECTRONIC ARTS INC.