KEKER & VAN NEST LLP
SUSAN J. HARRIMAN - #111703
sharriman@kvn.com
ERIC H. MACMICHAEL - #231697
emacmichael@kvn.com
R. ADAM LAURIDSEN - #243780
alauridsen@kvn.com
TIA A. SHERRINGHAM - #258507
tsherringham@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415-391-5400
Facsimile:  415-397-7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN ANTONICK, an Illinois citizen,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC., a California corporation,<br><br>Defendant. | Case No. 3:11-CV-01543-CRB (EDL)<br><br>**DECLARATION OF ROBERT ZEIDMAN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF EXPERT WITNESS ROBERT ZEIDMAN**<br><br>Judge:    Hon. Charles R. Breyer<br><br>Date Filed: March 30, 2011<br><br>Trial Date: June 17, 2013 |

DECLARATION OF ROBERT ZEIDMAN IN SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION IN LIMINE NO. 2
Case No. 3:11-CV-01543-CRB (EDL)

754521.01

I, Robert Zeidman, declare as follows:

1. I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.

2. I have served as an expert witness in over 50 matters related to source code copying, copyright claims and other intellectual property issues. In many of these matters, I used the CodeMatch and SourceDetective tools. No court has ever found my methods unreliable or excluded my testimony.

3. CodeMatch and SourceDetective are part of the CodeSuite set of tools. CodeSuite is a commercially available program. To the best of my knowledge, CodeSuite tools have been used by experts in at least 65 cases.

4. Prior to my involvement in this litigation, Plaintiff's expert Mr. Michael Barr purchased a license to use the CodeSuite tools. I also trained Mr. Barr on how to use the CodeSuite tools for source code analysis.

5. My staff and I spent hundreds of hours conducting manual review of the source code at issue in this case. In addition to looking at all of the source code cited in Mr. Barr's report, we also spent hundreds of hours manually reviewing the source code identified in our CodeMatch analysis in order to determine whether there were any signs of copying.

6. I also used the CodeSuite tools to assist me in my source code analysis. For my analysis using the CodeMatch tools, I reviewed source code from both electronic and hard-copy originals. The majority of the source code I reviewed came from electronic files.

7. The hard-copy source code I reviewed was converted into scanned files with the use of OCR software. To ensure the accuracy of the scans, I had my staff spend over 200 hours conducting quality-control review on the scanned files, manually fixing OCR errors due to the quality of the printouts.

8. Mr. Barr identifies two purported typos in the scanned source code files. CodeMatch is capable of finding partial and incomplete matches, so neither typo had a material impact on the analysis.

DECLARATION OF ROBERT ZEIDMAN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2
Case No. 3:11-CV-01543-CRB (EDL)

754521.01

9. I understand that Mr. Barr alleges that there are "errors" in my language definition files because labels are treated as both identifiers and statements. This is not a mistake. A label is a type of identifier, but a statement can consist of a single label. In analogy, "Cher" is a first name, but in at least one case it is also a full name. Right above the table Mr. Barr references in my book, it explains that "Statements can be further broken down into instructions and identifiers." This is shown by the indentation in the table. Later it states "Identifiers comprise variables, constants, functions, and labels." This is again illustrated by the indentation in the table. So a statement consists of at least one of instructions, variables, constants, functions, and labels.

10. The so-called "error" that Mr. Barr identifies actually results in a more thorough review of source code than if the "error" were corrected. If the language definition files were altered as Mr. Barr suggests, fewer code elements would have been marked as matches requiring further review to determine whether they are suspicious.

11. When Antonick initially produced certain source code files in this litigation, he identified them as source code for the Apple II. Antonick later disclosed that some of the source code was actually for the IBM PC. When Antonick disclosed this labeling error, I adjusted my analysis accordingly. I made no changes to any language definition files.

12. I have used the CodeSuite tools several times as an expert witness for comparisons between assembly languages and high-level languages. These comparisons are more challenging than the assembly language to assembly language comparisons I conducted in this case because assembly languages and high-level languages are less similar in syntax.

Executed this 13 day of May, 2013 at Cupertino, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
ROBERT ZEIDMAN