IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBIN ANTONICK,

    Plaintiff,

v.

ELECTRONIC ARTS INC.,

    Defendant.

                                  /

No. CV 11-01543 CRB

**PHASE TWO PRETRIAL ORDER**

    In preparation for Phase Two of the trial in this action, the Court makes the following rulings regarding Antonick's remaining claims.

**I.    Antonick's Claim for Breach of Contract with Respect to Derivative Works**

    The Court first briefly reviews the status of Antonick's Derivative Works claim to explain how the trial of this claim will proceed. Antonick alleges that EA breached the 1986 Contract by failing to pay him royalties on Derivative Works of the Madden game he developed. The 1986 Contract, in relevant part, defines "Derivative Work" as "any computer software program or electronic game which . . . constitutes a derivative work of the Work within the meaning of the United States Copyright law." 1986 Contract § 1.03. In Phase Two, the jury must therefore decide whether the subsequent versions of Madden are derivative works of Antonick's version—that is, whether the subsequent versions copied

from Antonick's version.[1] Copying can be proven circumstantially by showing that (1) the defendant had access to the copyrighted work, and (2) the protected portions of the works are substantially similar. See Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 636-37 (9th Cir. 2008).[2]

In its Order granting in part and denying in part EA's Third Motion for Summary Judgment (dkt. 355) ("Order"), the Court applied the extrinsic part of the Ninth Circuit's test for substantial similarity by examining each of the alleged similarities between Antonick's work and the challenged versions and then determining whether each element is protectable. See Order at 15-32. Having found that eight elements are unprotectable and two are protectable, id., the Court must now filter out the unprotectable elements to determine the scope of copyright protection Antonick's version should be afforded: broad or thin. See Mattel, Inc. v. MGA Entm't, 616 F.3d 904, 914-15 (9th Cir. 2010).[3] As the Ninth Circuit has explained,

> If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is "broad" and a work will infringe if it's "substantially similar" to the copyrighted work. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is "thin" and a work must be "virtually identical" to infringe.

Id. at 913-14.

---

[1] "Under U.S. copyright law, 'a work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a preexisting work had been taken without the consent of a copyright proprietor of such preexisting work.'" 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 3.01 (2011); Mirage Editions, Inc. v. Albuquerque A.R.T. Co., 856 F.2d 1341, 1343 (9th Cir.1988).

[2] Antonick continues to try to persuade the Court that "Derivative Work" means something other than its meaning within United States copyright law. See Joint Jury Instruct. (dkt. 400) at 26 ("Infringement is not an issue relevant to Section 1.03(a) of Exhibit A to the 1986 Contract. Compensation triggers on a showing that the subsequent game was 'based on' the Work."). The Court has already rejected Antonick's argument that he is entitled to royalties any time his work was used, regardless of whether that work was copyrightable. See Order at 9-10; see also Allen v. Academic Games, 89 F.3d 614, 617 (9th Cir. 2007) (rejecting plaintiff's assertion "that to constitute a derivative work, the infringing work need only incorporate in some form a portion of the copyrighted material.").

[3] Filtering out the unprotectable elements during the extrinsic test is necessary because "the party claiming in infringement may place 'no reliance upon any similarity in expression resulting from' unprotectable elements." Apple Computer v. Microsoft Corp., 35 F.3d 1435, 1446 (9th Cir. 1994) (quoting Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987)).

1  Broad protection has been given to works such as fabric designs,[4] fashion dolls,[5] and
2  decorative plates[6], while thin protection has been given to works such as graphical user
3  interfaces[7] and animal sculptures.[8] Due to the narrow range of possible expression for a
4  football video game and the fact that only two of the ten similar elements are protectable, the
5  Court concludes that Antonick's work is entitled to only thin protection.[9] Like a karate video
6  game or a jellyfish sculpture, the game of football is not "susceptible of a wholly fanciful
7  presentation." Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 209 (9th Cir. 1988) ("[T]he
8  visual depiction of karate matches is subject to the constraints inherent in the sport of karate
9  itself."). For the purposes of the intrinsic test, therefore, "the appropriate standard for illicit
10 copying is virtual identity."[10] Apple Computer, 35 F.3d at 1439.

---

[4] L.A. Printex Indus. v. Aeropostale, Inc., 676 F.3d 841, 851 (9th Cir. 2012).

[5] Mattel, 616 F.3d at 916.

[6] McCulloch v. Albert E. Price, Inc., 823 F.2d 316 (9th Cir. 1987).

[7] Apple Computer, 35 F.3d at 1446.

[8] Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003).

[9] See also Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763, 765-66 (9th Cir. 2003) (The similarity of the two photographs at issue was " inevitable, given the shared concept, or idea, of photographing the Skyy bottle. When we apply the limiting doctrines, subtracting the unoriginal elements, Ets-Hokin is left with only a "thin" copyright, which protects against only virtually identical copying."); Apple Computer, 35 F.3d at 1447 ("Having correctly found that almost all the similarities spring either from the license or from basic ideas and their obvious expression, it correctly concluded that illicit copying could occur only if the works as a whole are virtually identical."); Berkla v. Corel Corp., 66 F. Supp. 2d 1129, 1142 (E.D. Cal. 1999) ("Weak copyrights such as Berkla has here, where the protectable expressions are few and the unprotectable similarities many, remain entitled to protection, but not pursuant to the traditional substantial similarity test. Only if the defendant has virtually identically copied the plaintiff's expressive work will infringement be found.").

[10] Antonick contends that the Court already determined that the applicable standard is substantially similar rather than virtually identical. This is not so. The term "substantially similar" is admittedly confusing in the context of the extrinsic/intrinsic analysis. It refers to the second prong of the infringement standard, but also refers to the standard a jury applies during the intrinsic test if a court, as a result of the extrinsic test, finds that the work is entitled to broad copyright protection. In other words, if a court were to find that there is a wide range of possible expression, and the work is therefore entitled to broad copyright protection, then the jury would consider whether the copyrighted work and the challenged work are substantially similar when compared as a whole. On the other hand, if a court were to find that there is a narrow range of possible expression and the work is therefore entitled to thin copyright protection, then the jury must determine whether the two works are virtually identical when compared as a whole. Given the two standards under which a challenged work can meet the second prong of the infringement standard depending on whether the copyrighted work is granted broad or thin

Accordingly, the jury in this case will be asked whether an ordinary reasonable observer would consider Antonick's work and the later Madden versions virtually identical when viewed as a whole. Mattel, 616 F.3d at 914; see also Berkla, 66 F. Supp. 2d at 1142 ("The intrinsic or subjective application looks at the reaction of a reasonable observer—would that observer believe that the works at issue are virtually identical when viewing them as a whole.").

The final issue for the Court to address at this time is whether the jury will hear evidence of the unprotectable elements of Antonick's version. See EA MIL 1 (dkt. 372). The Court finds that it should, and therefore denies EA's First Motion in Limine. Because the jurors must evaluate the works "as a whole," it would be inappropriate to filter out the unprotectable elements and thus limit their ability to consider the games in their entirety. See Dream Games v. P.C. Onsite, 561 F.3d 983, 989 (9th Cir. 2009); Harper House v. Thomas Nelson, Inc., 889 F.2d 197, 207-08 (9th Cir. 1989). In accordance with the Ninth Circuit's holding in Dream Games, 561 F.3d at 989, the Court's instructions to the jury will identify which of the ten elements are unprotectable.

---

protection, the odd result is that a jury can find the work substantially similar if (a) it has broad protection and is substantially similar or (b) it has only thin protection and is virtually identical.

## II. Antonick's Other Breach of Contract Claims and Fraud Claims

At the Phase Two Pretrial Conference on June 26, 2013, the Court granted EA's Third Motion in Limine, which sought to exclude evidence of ancillary contract breaches. See generally EA MIL 3 (dkt. 374); 6/26/13 Hr'g Tr. at 47. In addition, upon consideration of the parties' supplemental briefing regarding Antonick's fraud claim and the entire record of the case, the Court now holds that Antonick has failed to state a claim for fraud. The Court will provide its reasoning for these rulings in a subsequent order.

Accordingly, the sole claim that will proceed to trial is Antonick's claim that EA breached the 1986 Contract by failing to pay him royalties on Derivative Works.

**IT IS SO ORDERED.**

Dated: July 2, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE