THE PAYNTER LAW FIRM PLLC
Stuart M. Paynter (226147)
Jennifer L. Murray (*Pro Hac Vice*)
Sara Willingham (*Pro Hac Vice*)
1200 G Street N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
Email: stuart@smplegal.com
      jmurray@smplegal.com
      swillingham@smplegal.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Robert B. Carey (*Pro Hac Vice*)
Leonard W. Aragon (*Pro Hac Vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
      leonard@hbsslaw.com

Attorneys for Plaintiff Robin Antonick

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN ANTONICK, an Illinois Citizen,<br><br>    Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC., a California corporation,<br><br>    Defendant. | Case No. 3:11-cv-01543-CRB<br><br>**PLAINTIFF'S TRIAL BRIEF TO EXCLUDE (1) UNTIMELY DISCLOSED GAMES; (2) ANY UNDISCLOSED EXPERT TESTIMONY REGARDING THE LOGICAL FIELD WIDTH OF GAMES NOT AT ISSUE IN THIS CASE; AND (3) ARGUMENT THAT THE FIELD WIDTH IN NON-EA GAMES WAS WIDER THAN NFL REGULATIONS**<br><br>Judge:    Hon. Charles R. Breyer<br>Ctrm:    6, 17th Floor<br><br>Date Compl. Filed:    March 30, 2011<br>Trial Date:    June 17, 2013 |

## I. INTRODUCTION

Three days before the May 23, 2013 Final Pretrial Conference in this case, Electronic Arts ("EA") disclosed that it intended to use at trial retail copies of four third-party videogames that were contemporaries of the original versions of *John Madden Football*. EA also disclosed a manual for its basketball game *One on One*. Plaintiff does not object to the admission of these games into evidence to the extent that EA wishes to discuss its packaging or manuals; however, Plaintiff does object to any expert testimony being elicited based on these games or the *One on One* manual. Any such testimony clearly violates Rule 26 and the discovery schedule set by this Court. The materials were disclosed on the eve of trial, five months after discovery closed, and after all expert depositions were complete.

Separately, Plaintiff also seeks an order preventing EA from introducing any expert testimony that the logical field width of games other than those at issue in this case is wider than a regulation NFL field. There is simply no disclosed expert testimony on this point.

Similarly, EA should be prohibited from arguing that third party games, such as *Monday Night Football*, were designed so that the field appears to the end user to be wider than a regulation NFL field. Not only is there no expert testimony on that point either, but even if offered by a fact witness, such testimony runs counter to the parties' stipulation that playing or viewing the game tells the viewer nothing about the logical field in the game. A party cannot make arguments contrary to a stipulation. *See E. H. Boly & Son, Inc. v. Schneider*, 525 F.2d 20, 23 n. 5 (9th Cir. 1975) ("Parties are bound by stipulated facts in a pretrial order."). At minimum, the parties' stipulation establishes that permitting such argument is irrelevant and prejudicial. EA seeks to argue to the jury that it was a common industry practice to design games so that the field appeared wider than an NFL field and that this purported industry practice explains the logical field width *in the 1990 Sega Genesis code*. But as the stipulation makes clear, that inference can only be drawn with the assistance of expert testimony, which EA easily could have introduced but intentionally chose not to disclose or introduce.

## II. BACKGROUND

**A. EA Produces Copies of Four Games and the Manual for *One on One* Five Months After the Close of Discovery.**

Discovery closed on December 12, 2012. Five months later on the eve of trial and three days before the May 23, 2013 Final Pretrial Conference, EA disclosed four previously undisclosed retail versions of the following videogames: (i) *Monday Night Football*, (ii) *TV Sports Football*, (iii) *GFL Championship Football* and (iv) *Touchdown Football*. Ex A, EA's Third Supp. Disclosures. EA also disclosed the manual for the *One on One* videogame. Plaintiff has never seen the videogames and does not know the year or platform of the games. These retail versions were not relied upon or considered by any expert. Paynter Decl. ¶ 3. Plaintiff does not know how EA's expert would use these games and the *One on One* manual. EA's untimely disclosure states only that it "may use" them to "support its claims and defenses." *See* Ex. A, EA's Third Supp. Disclosures.

**B. EA Proffered No Expert Testimony as to the Field Width in Non EA Games.**

**1. Lerner**

Lerner's opening report does not talk about the field width of *any* game let alone any game that is not at issue in this case, such as *Monday Night Football* or *Touchdown Football*. In fact, Mr. Lerner apparently was not even aware of the issue at the time because he calls the Sega Genesis field "realistic" in his initial report. Lerner at 36. In his rebuttal report, Mr. Lerner's discussion of field width is limited a single statement that merely summarizes Barr's report: "'Mr. Barr states on page 35 of his report that, "[s]pecifically, the hexadecimal numbering system that Antonick chose (8 units per 5 yards) resulted in a field of an unorthodox width of 80 yards.'" Nowhere does Mr. Lerner discuss or compare the field widths of any game, such as *Monday Night Football* or *Touchdown Football* in this case.

**2. Zeidman**

Paragraphs 68-89 of Zeidman's rebuttal report and the same paragraphs of his supplemental rebuttal report discuss field width and do not mention any game other than the games at issue in this case. This is true even though Zeidman had in his possession source code for *Touchdown Football* and *Monday Night Football* and, in fact, ran those programs through his software.

**C.     Electronic Arts Introduces Lay Testimony as to Visual Field Width in Games Not At Issue in This Case.**

On direct examination of Mr. Orr, EA elicited testimony that the field width in *Monday Night Football* and another game called *GLF Football* was designed to appear "visually" wider to the "end user" in order to accommodate the avatars on the screen.[1] Mr. Orr did not know or say how much wider. *Id.* Mr. Orr also candidly admitted that he had no familiarity or knowledge with the logical field width expressed in the code of either game because he had "never programmed or coded."[2]

### III.     ARGUMENT

**A.     Expert Testimony Based on Untimely Disclosed Materials Must Be Excluded.**

The four videogames and *One on One* manual were disclosed three days before the Final Pretrial Conference in this matter. Zeidman, whose report was limited to a discussion of source code, never submitted any expert testimony analyzing these newly submitted videogames. He clearly cannot testify about them at trial. Lerner likewise never relied on these retail copies of third party videogames. Instead, as discussed more fully in Plaintiff's Motion in Limine No. 1, he based his conclusions on "minute or two" YouTube videos. *See* Dkt. 381, Pls Mot. in Limine No. 1. Lerner did so even though he admitted that there are "plenty" of YouTube videos not of high quality, that "videos tend to blur things," and that one should be "careful" with the internet as it "wouldn't be hard to create [one of the images in the report] if you wanted to try to deceive somebody." *See id.* at 53, 65, 57-58. He said that he did not bother to use actual retail versions of the games because it would be too "time-consuming." *Id.* EA should not now be permitted to perform a bait and switch in front of the jury by playing newly disclosed retail versions of third party videogames and having Lerner testify based on them.

**B.     EA May Not Introduce Expert Testimony Regarding the Logical Field in Other Games.**

Plaintiff's expert did not have the code for the *Monday Night Football* videogame when he disclosed his expert report on October 15, 2012. Paynter Decl. ¶ 4. On November 30, 2012, EA

---

[1] Trial Tr. at 996:20 & 997:9. *See generally* Trial Tr. at 992:23-993:25; 996:16-997:10.
[2] Trial Tr. at 977:8-9; *see also* 997:2 ("I can't speak specifically to the technical aspect of it"); Trial Tr. at 992:25-993:2 (same).

3

PLAINTIFF'S TRIAL BRIEF REGARDING EXPERT TESTIMONY ON UNDISCOLOSED VIDEOGAMES
3:11-cv-01543-CRB

submitted a rebuttal expert report from Robert Zeidman and, in conjunction with this disclosure, produced source code for *Monday Night Football Id.* ¶ 5. EA delayed disclosing this source code even though it necessarily possessed it before Zeidman's report was due because Zeidman ran it through his CodeMatch program.[3] Despite having access to source code of non-*Madden* games released by EA's competitors, Zeidman disclosed no analysis of the logical field width in any of those games. *See supra* II.B(2). Nor did EA's other expert Edward Lerner ever address the logical field width in any of his reports. *See supra* II.B(1).

Having failed to disclose any expert testimony regarding the logical field width in third party games, such as *Monday Night Football*, EA cannot now introduce expert evidence about the field width in games other than those it released. Such testimony would clearly prejudice Plaintiff. Because none of EA's experts testified regarding the logical field width, Plaintiff chose not to incur the expense of having Mr. Barr analyze the football field width(s) contained in *Monday Night Football* and *Touchdown Football*. Plaintiff therefore has no way to rebut any analysis proffered by EA's experts. EA should be prohibited from putting on any expert evidence related to the field width of third party games.

**C. EA May Not Argue Based on Testimony of Fact Witnesses that the Field Width in Other Games Exceeded NFL Regulations.**

At trial, EA's witness Scott Orr testified that the *visual* field width of certain third party games was designed to appear to the end user to be wider than a real NFL field.[4] Mr. Orr admitted that he had never programmed or coded in his life. Trial Tr. at 977:8-9. EA obviously intends to argue based on this testimony that the jury can infer the existence of a common industry practice to release football videogames with *logical* fields vastly larger than real NFL fields. The Court should nip this attempt to end run expert disclosures in the bud. As discussed *supra* III.B, Zeidman had the source code for at least two third party games when he prepared his report but chose either not to analyze the width of the logical field in those games or, if he did, chose not to disclose it to

---

[3] *See* Zeidman Rebuttal, Section IV(C)(outlining results of CodeMatch comparison of 1990 Sega Genesis source code to *Monday Night Football* and *Touchdown Football* source code).

[4] As Mr. Barr explained the logical field is a rectangle. Trial Tr. at 1319:3-6. The *visual* field displayed on the screen appears to be a rectangle because it is drawn in perspective, but is actually a trapezoid. *Id.*

4

Plaintiff. EA cannot now circumvent its failure to disclose any expert testimony on this issue by introducing testimony from fact witnesses about the *visual* field width as it appeared to end users and then arguing in closing that the jury can make inferences about the *logical* field in the source code. Such testimony and argument is improper because it directly contradicts the parties' binding stipulation that a person viewing or playing the *Madden* game on the Sega Genesis or Super Nintendo platforms would not be able "to determine how a particular game element was expressed in the source code." Dkt. 418, Phase 1 Stip. ¶ 4.

Even if EA did not technically violate the stipulation, at minimum, EA would need to introduce expert evidence to show that a football field that appears wider to the "end user" indicates that the logical field in the source code is wider. No such evidence exists and without such evidence the jury may not properly infer that the *logical* field of the games mentioned by Scott Orr was wider than a regulation NFL field. More to the point, EA had the source code for at least two third party games. It could have submitted expert evidence about the width of the logical field in those games but it chose not to do so. Permitting EA to backdoor testimony about the logical fields of third party games into evidence by combining testimony from fact witnesses who lack programming experiencing with inferences unsupported by any expert evidence and contradicted by the parties' stipulation is clearly prejudicial to Plaintiff.

## IV.   CONCLUSION

EA should be prohibited from introducing expert testimony regarding or relying on the materials disclosed in its Third Supplemental Disclosure, specifically (i) *Monday Night Football*, (ii) *TV Sports Football*, (iii) *GFL Championship Football*; (iv) *Touchdown Football*; and (v) the game manual for *One on One*. EA should also be prohibited from introducing any expert testimony regarding the logical field width of games not at issue in this case. Finally, EA should be prohibited from arguing to the jury, during closing or otherwise, that the jury can infer the existence of a common industry practice to release football videogames with *logical* fields vastly larger than real NFL fields based on testimony that the *visual* field width in third party games may have appeared to the end user to be wider than a regulation NFL field.

| | | |
|---|---|---|
| 1 | DATED: July 14, 2013 | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 2 | | |
| 3 | | By   /s/ Leonard W. Aragon<br>      LEONARD W. ARAGON |

Robert B. Carey (*Pro Hac Vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
      leonard@hbsslaw.com

Stuart M. Paynter (226147)
Jennifer L. Murray (*Pro Hac Vice*)
Sara Willingham (*Pro Hac Vice*)
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
Email: stuart@smplegal.com
      jmurray@smplegal.com
      swillingham@smplegal.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Attorneys for Plaintiff Robin Antonick

PLAINTIFF'S TRIAL BRIEF REGARDING EXPERT TESTIMONY ON UNDISCOLOSED VIDEOGAMES
3:11-cv-01543-CRB